IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02800-MSK-KMT

WALID MOAZ,

    Plaintiff,

v.

CONOCO PHILIPS,

    Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 45)**, to which Mr. Moaz has not filed any response. Also pending is the Defendant's Motion to Strike the Plaintiff's Jury Demand **(# 44)**, which, for the reasons set forth herein, is denied as moot.

## FACTS

Mr. Moaz's *pro se* Amended Complaint **(# 8)** asserts claims of discrimination – in the form of failure to promote and discharge from employment – and harassment based on his Egyptian national origin and Muslim religion, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

The Defendant moves for summary judgment **(# 45)**, and Mr. Moaz has not responded. Accordingly, the Court deems those facts recited by the Defendant and supported by evidentiary

1

material to be unrebutted.[1]  Fed. R. Civ. P. 56(e)(2), (3).

Mr. Moaz was hired in October 2007 by the Defendant as Assistant Manager of one of the Defendant's convenience stores in Lone Tree, Colorado.  Mr. Moaz received training in his job duties and company policies and was evaluated for possible promotion to a training program for Store Managers.  In March 2008, Mr. Moaz began complaining that he was not receiving the same level of training as a co-worker, Kristen Focken, who had been hired before Mr. Moaz.  Mr. Moaz's District Manager, Melissa Serafin, discussed his concerns and transferred him to a store in Aurora, Colorado that would provide him with more training.  However, Mr. Moaz experienced an otherwise unspecified "dispute with a co-worker" at the new store, and thus, in May 2008, he was transferred to a store in Englewood, Colorado.

In August 2008, the Defendant issued a series of disciplinary notices to Mr. Moaz.  The first notice resulted from an incident in which Mr. Moaz called a subordinate "stupid" in front of a customer.  In reviewing security video footage related to that incident, the Defendant also issued Mr. Moaz a separate disciplinary notice for violating safety policies by leaving a crate in a high-traffic walkway.  Later that month, the Defendant issued Mr. Moaz a third notice for leaving the enclosed register are while customers were present in the store without engaging the store's magnetic locks.  On August 27, 2008, Ms. Focken complained that, while conducting an audit at Mr. Moaz's store, Mr. Moaz passed her a note reading "your lips look very nice."  Mr. Moaz asked Ms. Focken to read the note, then stated that he would "destroy the evidence," tearing up the note and throwing it in a trash can.  (The Store Manager later recovered the note.)

---

[1]To the extent Mr. Moaz's Amended Complaint contains allegations to the contrary of the material submitted by the Defendant, Mr. Moaz's pleading is not verified under penalty of perjury, preventing the Court from treating it as an affidavit pursuant to 28 U.S.C. § 1746.

As a result of "multiple infractions of Company rules," the Defendant terminated Mr. Moaz's employment on September 2, 2008.[2]

Mr. Moaz's Amended Complaint makes a passing reference to Ms. Serafin denying his request for leave to observe religious holidays. The Defendant has filed an excerpt from Mr. Moaz's deposition that relates his request on this issue. Mr. Moaz testified that "when [he] first started," he requested from Mr. Russell, the Store Manager in Lone Tree, that he have "Thursday and Friday off," and that he would also like to "get my holidays – my holy holidays off." Mr. Moaz testified that Mr. Russell "didn't care about it,"[3] so he brought the issue to Ms. Serafin, whom, he states, also "didn't care about it." Mr. Moaz then e-mailed Gabby Ring, the Division Manager and Ms. Serafin's supervisor about the issue. (The tendered deposition excerpt does not reveal Mr. Moaz's version of Ms. Ring's response.)

The Defendants have submitted Ms. Serafin's affidavit which casts the holidays issue in a slightly different light. Ms. Serafin states that Mr. Moaz "never asked for any time off for religious reasons." She notes that Mr. Moaz did submit an e-mail from to Ms. Ring, dated May 10, 2008, in which Mr. Moaz writes:

> my schedule has been changing a lot for last 3 weeks and I have not been able to plan any thing with my family. I want to have the opportunity and get a stable schedule like most of employee[s]. I

---

[2]After Ms. Serafin advised Mr. Moaz that he was being placed on administrative leave pending investigation into the note incident, Mr. Moaz reported to her that he had suffered an on-the-job injury the previous day. According to the Defendant's policies, on-the-job injuries must be reported "within five minutes of the occurrence." It is not clear whether the Defendant separately disciplined Mr. Moaz for not promptly reporting his injury, or whether the failure to timely report the injury factored into the Defendant's decision to terminate him.

[3]Mr. Moaz later appeared to testify that Mr. Russell denied his request for Fridays off because Fridays were particularly busy days at the store.

> would like to get Thursday and Friday off. I also like to work day shift on the weekend because I have a soccer activity on the weekend.

The exhibit tendered by the Defendant also includes Ms. Ring's response to Mr. Moaz which indicates that Mr. Moaz had been reassigned to another store and that he should "[w]ork with Heather, your Store Manager at that site, regarding your schedule." The record does not reflect anything further with regard to Mr. Moaz's request for religious holidays off.

## ANALYSIS

### A. Standard of review

#### 1. *Pro se* filings

In considering the Mr. Moaz's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Moaz of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Moaz according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

#### 2. Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and

a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Discrimination claims

The Court turns first to Mr. Moaz's claim(s) that he was subjected to disparate treatment on the basis of his national origin and religion in violation of Title VII. To prove a claim of this type, Mr. Moaz must first demonstrate a *prima facie* case of discrimination by showing: (i) he was a member of a class protected by Title VII; (ii) he possessed the minimum objective qualifications for his position (or the position he sought promotion to); (iii) he suffered an adverse employment action; and (iv) the adverse action occurred in circumstances giving rise to an inference of discrimination. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009); *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1225 n. 11 (10th Cir. 2006). If Mr. Moaz carries his burden of demonstrating a *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse action, and Mr. Moaz has the ultimate burden of demonstrating that the Defendant's proffered reason is a pretext and that discriminatory animus was the true reason for its action. *Id.*

Here, the Defendant does not appear to materially dispute Mr. Moaz's ability to establish the first two elements of a *prima facie* case. The facts are undisputed that Mr. Moaz suffered, at most, three potential actions that might arguably be considered "adverse": (i) he was denied a promotion to Store Manager; (ii) he was not given religious holidays off as he requested; and (iii) he was terminated. Assuming, without necessarily finding, that each of these could

constitute an actionable adverse action for Title VII purposes, the Court turns to the remainder of the analysis for each action separately.

Turning first to the denial of a promotion to Store Manager, the record does not indicate that an open position of that type existed during the period that Mr. Moaz was employed. Ms. Serafin's affidavit is the only evidence in the record that addresses this matter, and she states only that "the promotion of an Assistant Manager to an MIT [Manager-In-Training] position depended on the needs of the Company, i.e. whether there was an opening or projected opening for a Store Manager, as well as the performance and development of the Assistant Manager." Ms. Serafin does not state that any MIT position opened up during Mr. Moaz's employment, and with Mr. Moaz not having come forward with any admissible evidence on the issue, the Court cannot find that a promotional opening even existed, much less that it was denied to Mr. Moaz.[4]

---

[4] Although the Court does not treat Mr. Moaz's unverified Amended Complaint as evidence, the Court observes that that pleading alleges that two individuals were placed in the MIT program during Mr. Moaz's employment. The first is identified as a "Jeff Sabato," who, from the apparent chronological organization of the Amended Complaint, was placed in the MIT program sometime between Mr. Moaz's start date in October 2007 and his taking a leave of absence in early February 2008. Ms. Serafina affidavit points out that on April 29, 2008, Mr. Moaz completed a self-evaluation of his performance as an Assistant Manager, in which he rated himself as "beginner" or "learner" with regard to more than half of the developmental goals for Assistant Managers, strongly indicating that Mr. Moaz would not have been considered qualified for any MIT opening given to Jeff Sabato several months earlier.

Mr. Moaz also appears to allege that Ms. Focken was put in the MIT program "after [having] been an Ass[istant] Manager for 5 weeks." Mr. Moaz appears to contend that this promotion occurred in or about March or April 2008, as he states that Ms. Focken was promoted from Cashier to Assistant Manager during the time that Mr. Moaz was on a leave of absence in February and early March 2008, and that Ms. Focken was then promoted to the MIT program after only 5 weeks as an Assistant Manager. Assuming that Ms. Focken's promotion occurred on or before April 29, 2008 – the date that Mr. Moaz's self-evaluation rated him as a "beginning" in many of the tasks of an Assistant Manager – it does not appear that Mr. Moaz would have been considered qualified for the MIT program opening given to Ms. Focken.

Thus, even if the Court were to consider the allegations in Mr. Moaz's Amended Complaint as true, he has nevertheless failed to show facts that would suggest that his denial of

Under these circumstances, the Court cannot find that Mr. Moaz experienced an adverse employment action with regard to any alleged failure to promote.

Next, the Court examines Mr. Moaz's contentions that he was discriminated against by being scheduled to work during his religious holidays.  As recited above, the record is somewhat vague on the holiday issue (as opposed to Mr. Moaz's apparently unrelated request for Thursdays and Fridays off).  The record reflects only that Mr. Moaz's request for religious holidays was initially denied by Mr. Russell, his Store Manager in Lone Tree; that he made some sort of unspecified appeal of that decision to Ms. Serafin without success; and that he made no mention of religious holidays when e-mailing Ms. Ring and was instructed to make schedule arrangements with his new Manager.  Under these circumstances, the Court cannot say that the denial of Mr. Moaz's request for religious holidays occurred in circumstances giving rise to an inference of discrimination.

Ms. Serfain expressly contends that Mr. Moaz never mentioned religious obligations when appealing Mr. Russell's decision to her, making it impossible for her to know that Mr. Moaz was requesting a religious accommodation, rather than simply a social one.  Superficially, one might read Mr. Moaz's deposition testimony to dispute Ms. Serafin's contention, theoretically raising a genuine dispute of fact as to whether Ms. Serafin knew of the relgious nature of Mr. Moaz's request.  But that question becomes largely irrelevant once Mr. Moaz petitioned Ms. Ring with regard to the issue.  The record is clear and unambiguous that Mr. Moaz's communication with Ms. Ring made no mention whatsoever of a need for leave to accommodate religious obligations, and thus, the Defendant's failure to grant Mr. Moaz such

---

promotions to open MIT program spaces was discriminatory.

leave was the result of Mr. Moaz not making the religious character of his request clear to the last decisionmaker involved.  Without a showing that Ms. Ring knew of and consciously rejected Mr. Moaz's request for a religious accommodation, the Court cannot infer that the Defendant's decision (as implemented by Ms. Ring) was discriminatory.

Finally, the Court turns to Mr. Moaz's termination.  Certainly, termination is an adverse employment action, and there is evidence that might permit an inference that that termination was discriminatory.  Specifically, the Defendant has proffered evidence that Ms. Serafin twice told Mr. Moaz that "she can't trust anybody from the Middle East like [him]."  Ms. Serafin is the supervisor who completed each of the disciplinary notices that underlie the decision to terminate Mr. Moaz, and thus, given the relatively light burden placed on an employee at the *prima facie* stage, the Court is prepared to conclude that Mr. Moaz has demonstrated that his termination arose in circumstances that could give rise to an inference of discrimination.  However, even if the Court credits Mr. Moaz's accusation that Ms. Serafin twice made dispaging comments about persons of his national origin, the record nevertheless reflects that three of the four disciplinary notices issued to Mr. Moaz were not infected by any animus of Ms. Serafin.  The record indicates that the notice issued to Mr. Moaz for creating a safety hazard and the notice issued to Mr. Moaz for leaving the cash register area and not engaging the store's locks were both corroborated by a security videotape that showed the incidents in question.  The incident in which Mr. Moaz gave the note to Ms. Focken was corroborated by Ms. Focken.  Thus, these notices satisfy the Defendant's burden of coming forward with a legitimate, non-discriminatory reason for Mr. Moaz's termination.

The burden then falls to Mr. Moaz to demonstrate that the Defendant's proffered

explanation is false and a pretext for discrimination. Pretext may be shown in a variety of ways, but typically, an employee must show "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007). Here, given that several of the disciplinary notices issued to Mr. Moaz were supported not just by Ms. Serafin's allegedly-biased say-so, but by objective, unbiased corroborating evidence, there can be little doubt that Mr. Moaz did indeed engage in the actions attributed to him. Mr. Moaz has not come forward with evidence to suggest that the Defendant has treated employees similarly-situated to him – employees who accumulate several disciplinary notices of comparable severity in a short period of time – were not similarly terminated. Accordingly, the Court finds that Mr. Moaz has not carried his burden of coming forward with evidence that would show that the Defendant's proffered reason for his termination is false and pretextual. Thus, the Defendant is entitled to summary judgment on Mr. Moaz's disparate treatment claim(s).

**C.  Harassment claim**

Construing Mr. Moaz's Amended Complaint in the light most favorable to him, the Court can also discern the contours of a claim for hostile environment harassment by Mr. Moaz, predicated on his national origin or religion. To establish a claim for hostile environment harassment, Mr. Moaz must show: (i) that he was subjected to hostile or offensive acts; (ii) that those acts were perpetrated based on Mr. Moaz's national origin or religion; and (iii) that the acts were sufficiently severe and pervasive so as to alter the terms and conditions of Mr. Moaz's

employment. *See generally Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998); *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).

The Defendant has submitted excerpts from Mr. Moaz's deposition that appear to indicate the entirety of the conduct that Mr. Moaz contends support a claim of harassment. Most prominently, Mr. Moaz alleges that on two occasions, Ms. Moaz made comments to him to the effect that she did not trust people from the Middle East. Mr. Moaz also contends that Ms. Serafin "made fun of" his accent, although he explained that she would sometimes instruct him to "speak slowly" to her "because [he has] a very thick accent" and she could not understand him. Mr. Moaz states that Ms. Serafin criticized his spelling in an e-mail that she distributed to the entire workforce, although the recipient list on the actual e-mail in the record does not indicate that it was sent to anyone other than Mr. Moaz and his Manager. Mr. Moaz also alleges that, on three occasions, Mr. Russell "ma[d]e fun of the way [he] speaks," in that after Mr. Moaz finished speaking, Mr. Russell "used to copy me the way I speak and laugh about it in front of" other employees.

Even accepting all of Mr. Moaz's allegations as true, the Court finds that he has not described a pattern of conduct rising to the level of "severe" and "pervasive" harassment. In judging the severity of a pattern of harassment, the Court must consider a number of factors, including the frequency of the conduct, its severity, whether it is physically threatening or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance, among others. *Nieto v. Kapoor*, 268 F.3d 1208, 1218 (10th Cir. 2001). Conduct must be severe from both a subjective perspective (*i.e.* the employee him- or herself perceives it as such) and objectively (*i.e.* that a reasonable employee in similar circumstances would have

perceived as much). *Id.* at 1220.

Here, Mr. Moaz's most troubling accusation would be the two comments by Ms. Serafin that expressly reflect animus against persons of Middle Eastern descent. In *Chavez*, the 10th Circuit concluded that two comments by a supervisor to a Hispanic employee – accusing the employee of being in a "clica" or clique and calling a white employee a "spic lover" in the Hispanic employee's presence – were not sufficiently severe and pervasive so as to create a racially-hostile working environment. 397 F.3d at 832. While condemning the remarks' content, the 10th Circuit distinguished two derogatory comments as falling "far short of the steady barrage required for a hostile environment claim." *Id.*, *compare Kapoor*, 268 F.3d at 1218-19 (finding sufficiently severe conduct where supervisor made "dozens of" offensive statements, including at least 13 instances of referring to Latino employees as "lazy" or "stupid Mexicans," referring to women as "whiny" and "overly sensitive," and physically pushed and intimidated subordinates). In light of similar conduct in *Chavez*, the Court cannot say that the two instances of ethnic insults uttered by Ms. Serafin are sufficiently severe or pervasive as to create a hostile working environment. The remainder of the conduct complained of by Mr. Moaz is even less offensive, and even when aggregated with Ms. Serafin's comments, is insufficient to create a genuine issue of fact for Mr. Moaz. Accordingly, the Defendant is entitled to summary judgment on Mr. Moaz's hostile environment claim.

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment **(# 45)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendant on all of Mr. Moaz's claims and close this case. The Defendant's Motion to Strike Plaintiff's Jury Demand **(# 44)** is **DENIED AS MOOT**.

Dated this 3rd day of August, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge